889 F.2d 1101
 13 U.S.P.Q.2d 2033
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
BOUNCE, INC., Appellant,
v.
VO-TOYS, INCORPORATED, Appellee.
 No. 89-1405.
 United States Court of Appeals, Federal Circuit.
 Oct. 31, 1989.
 
 Before PAULINE NEWMAN, BISSELL, and MICHEL, Circuit Judges.
 DECISION
 MICHEL, Circuit Judge.
 
 
 1
 This appeal is from the decision of the United States Patent and Trademark Office's Trademark Trial and Appeal Board (TTAB), VO-Toys, Incorporated v. Bounce, Inc., Cancellation No. 16,527 (TTAB Feb. 6, 1989), granting summary judgment in favor of VO-Toys, Incorporated, and cancelling Bounce, Inc.'s trademark registration. We vacate and remand.
 
 BACKGROUND
 
 2
 The TTAB presumed from the pleadings that Bounce used its registered KONG mark on rubber dog toys continuously since 1977. VO-Toys, slip op. at 4. In 1981 VO-Toys purchased the inventory of a Bounce distributor and began marketing the KONG toy. Id. at 7. Later VO-Toys obtained its own toys and sold them under the same mark. Id. at 5. In 1983 Bounce brought suit against VO-Toys in the United States District Court for the District of Colorado alleging infringement of the KONG mark. Bounce, Inc. v. All West Pet Supply Co., Civil No. 85-F-602, slip op. (D.Colo. Aug. 27, 1985). The suit ended in a consent judgment including a stipulated finding of fact that the trademark KONG "has been abandoned" by Bounce since Bounce "long ago ceased using the mark on its product." Id. at 2, p 7. The district court ordered Bounce's registration of the KONG mark cancelled. Id. at 3, p 4.
 
 
 3
 On November 17, 1986, Bounce filed a new U.S. Trademark Application for KONG and received registration on June 16, 1987. Later, VO-Toys filed a petition for cancellation of Bounce's mark. Bounce and VO-Toys each moved for summary judgment. VO-Toys' motion was granted and Bounce's KONG registration was ordered cancelled. The TTAB determined that VO-Toys sold goods under the KONG mark after 1981, VO-Toys, slip op. at 7, while Bounce continued to use the mark from 1981 until at least 1984, id. at 5. The TTAB nevertheless granted VO-Toys priority dating from 1981. Bounce appeals.
 
 OPINION
 
 4
 The TTAB erroneously granted summary judgment without first determining whether before Bounce abandoned its mark, VO-Toys used the KONG mark in good faith. If pre-abandonment use of the KONG mark by VO-Toys was not in good faith, then such use may not establish priority and there remains a genuine dispute of material fact as to whether Bounce or VO-Toys first used the mark after abandonment.
 
 
 5
 A. Abandonment.
 
 
 6
 Abandonment occurs "[o]nly when all rights of protection are extinguished...." Wallpaper Manufacturers, Ltd. v. Crown Wallcovering Corp., 680 F.2d 755, 765, 214 USPQ 327, 335 (CCPA 1982). Upon abandonment, the first user has "forfeited all rights" in the mark. Id. at 767, 214 USPQ at 337. Bounce's abandonment, therefore, forfeited all prior protectible rights it had in the KONG mark. The TTAB correctly ruled that the consent judgment estopped Bounce from asserting any rights based on use of the mark prior to the date of abandonment. The TTAB incorrectly assumed, however, that Bounce's forfeiture allowed VO-Toys to benefit from use in 1981.
 
 
 7
 B. Priority.
 
 
 8
 The TTAB awarded VO-Toys priority from 1981, the start of a period of several years when both VO-Toys and Bounce simultaneously marketed dog toys under the KONG mark. Granting VO-Toys a 1981 priority date would have been proper only if the TTAB had found that VO-Toys used the KONG mark in good faith prior to Bounce's abandonment. That is because simultaneous use of a mark may cause public confusion and unfair exploitation of another's good will, the very evils the trademark laws are designed to protect against. See James Burrough Ltd. v. Sign of the Beefeater, Inc., 540 F.2d 266, 276, 192 USPQ 555, 563 (7th Cir.1976) (Markey, C.J.) (sitting by designation) (Trademark laws exist "to protect the consuming public from confusion, concomitantly protecting the trademark owner's right to a non-confused public."); see also United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 98 (1918) (trademarks "facilitat[e] the protection of one's good will").
 
 
 9
 Bounce had a registered mark in 1981, but later abandoned the mark and thus cannot now claim protectible rights based on its use prior to abandonment. That does not mean VO-Toys necessarily benefits from pre-abandonment simultaneous use. See Action Temp. Serv., Inc. v. Labor Force, Inc., 870 F.2d 1563, 1566, 10 USPQ2d 1307, 1309 (Fed.Cir.1989) (mandating that TTAB consider actual notice by second user of first user's federally registered mark, since cancelled, in determining whether pre-cancellation use was lawful and thus may establish rights to concurrent use).
 
 
 10
 By allowing VO-Toys to benefit from its 1981 use without a finding of good faith, the TTAB disregarded the purposes of the trademark laws: prevention of potential public confusion and unfair exploitation of another's good will. VO-Toys must have used the mark in good faith, without notice of Bounce's prior use. See id. at 103 (use must be "in good faith and without notice of any prior use by others"). VO-Toys' use must have been "without the intent of copying it or profiting from the efforts of the originator and, therefore, without intending or reasonably anticipating confusion." Johanna Farms, Inc. v. Citrus Bowl, Inc., 468 F.Supp. 866, 876, 199 USPQ 16, 23 (E.D.N.Y.1978).
 
 
 11
 Accordingly, it is necessary to remand the case. On remand the TTAB should determine if VO-Toys' use of the KONG mark starting in 1981 was in good faith. If it finds good faith, then VO-Toys may be accorded priority dating from 1981 because "abandonment by a first user will perfect the title of a second user if the latter commenced using the mark in good faith before the abandonment." Id. at 878, 199 USPQ at 25. Upon such a finding, cancellation of Bounce's current registration of the KONG mark would be proper. If, however, the TTAB finds that VO-Toys did not adopt the mark in good faith, VO-Toys may not be accorded the right to exploit the mark prior to the date of abandonment. The TTAB must then determine exactly when abandonment occurred, a date that appears uncertain on the record before us and apparently could be anytime in 1984 or anytime in 1985 up to and including the date of the consent judgment.
 
 
 12
 Absent good faith use of the KONG mark by VO-Toys in the pre-abandonment period, there is a genuine issue of material fact as to whether VO-Toys or Bounce was the first user after Bounce abandoned the mark. The record reveals conflicting evidence as to post-abandonment use of the KONG mark by Bounce and VO-Toys, and the TTAB did not expressly find that VO-Toys was the first to use the mark in the latter period. Absent a finding of good faith use in the pre-abandonment period, a finding on the issue of first use in the post-abandonment period is essential.
 
 
 13
 The decision of the TTAB granting VO-Toys summary judgment is therefore vacated and the case is remanded for further proceedings consistent with this opinion.
 
 
 14
 BISSELL, Circuit Judge, concurring.
 
 
 15
 Although I concur in vacating and remanding the decision of the United States Patent and Trademark Office Trademark Trial and Appeal Board (TTAB), I do not agree with the majority's rationale. Because the issue here is trademark cancellation, not registration, good faith use by Vo-Toys is irrelevant. I would remand for a determination of whether Vo-Toys made a bona fide use of the mark KONG after Bounce's abandonment but before Bounce's first post-abandonment use.
 
 
 16
 If Vo-Toys were seeking to register the KONG mark, the general rule that the first party to use an abandoned mark is entitled to exclusive ownership and use of that mark would apply. See, e.g., California Cedar Prods. v. Pine Mountain Corp., 724 F.2d 827, 830, 221 USPQ 1137, 1139 (9th Cir.1984); 1 J. McCarthy, Trademarks and Unfair Competition Sec. 17:1, at 767-68 & n. 4 (2d ed. 1984) [hereinafter McCarthy]. In such a situation, good faith use* by Vo-Toys may be relevant. See, e.g., California Cedar, 724 F.2d at 830-31, 221 USPQ at 1140; Johanna Farms, Inc. v. Citrus Bowl, Inc., 468 F.Supp. 866, 878, 199 USPQ 16, 25 (E.D.N.Y.1978) (stating that "an abandonment by a first user will perfect the title of a second user if the latter commenced using the mark in good faith before the abandonment"). This case, however, deals with Vo-Toys' right to cancel, not acquire, a registration.
 
 
 17
 The Lanham Act allows Vo-Toys to cancel Bounce's registration if the registered mark is likely to cause confusion with "a mark or trade name previously used in the United States by another and not abandoned." 15 U.S.C. Sec. 1052 (1988) (emphasis added); see 15 U.S.C. Sec. 1064 (1988). Nothing in the Lanham Act or our precedent requires that the use relied on to cancel a mark be made in good faith. It is irrelevant whether Vo-Toys' prior use was made with, or without, knowledge of Bounce's pre-abandonment use.
 
 
 18
 Although Bounce constructively abandoned the mark on August 27, 1985, the date of the consent judgment, actual abandonment may have occurred prior to that date. On remand, the TTAB should first decide whether Vo-Toys made a bona fide use of the mark after the constructive date of abandonment but before Bounce's first post-consent judgment use. If Vo-Toys failed to make such a use, the TTAB should then determine the actual date of abandonment and decide the issue using that date instead.
 
 
 19
 To constitute a sufficient bona fide use, Vo-Toys must show that its use was not derivative of Bounce's pre-abandonment activities such that the use would not have inured to the benefit of Bounce under 15 U.S.C. Secs. 1055, 1127 (1988). Cf. La Chemise Lacoste v. Alligator Co., 374 F.Supp. 52, 70-71 (D.Del.), vacated on other grounds, 506 F.2d 339, 184 USPQ 321 (3d Cir.1974), cert. denied, 421 U.S. 937 (1975). In sum, a post-abandonment prior use by Vo-Toys would not require good faith, but would require that the use be non-derivative.
 
 
 
 *
 Good faith use under the Lanham Act refers to use of a trademark without knowledge, actual or constructive, of another's use, see 2 McCarthy Secs. 23:31(C), 26:13(B), 26:18 (2d ed. 1984), and is most frequently applied under 15 U.S.C. Sec. 1115(b)(5) (1988) to allow a good faith junior party to use a mark in a limited geographical area. See 2 McCarthy at Sec. 26:18. Good faith is also relevant to determining common law rights of ownership and priority. See, e.g., Stern Elecs., Inc. v. Kaufman, 669 F.2d 852, 857, 213 USPQ 443, 446-47 (2d Cir.1982)